UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNDERWRITERS AT LLOYDS, SYNDICATE 242 ET AL., § § § | |
| Plaintiffs, § § | |
| v. § § | CIVIL ACTION NO. 4:08-cv-3044 |
| TURTLE CREEK PARTNERSHIP, LTD. D/B/A TURTLE CREEK APARTMENTS ET AL., § § § § § | |
| Defendants. § | |

## ORDER

Pending before the Court is Plaintiffs'/Counter-Defendants' Motion for Summary Judgment (Doc. No. 18). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Plaintiffs' motion should be denied.

I.  BACKGROUND

This is a declaratory judgment action in which Plaintiffs Underwriters at Lloyds, Syndicate 242, and International Catastrophe Insurance Managers, LLC ("Lloyds" or "Plaintiffs") seek a judicial declaration that there is no coverage under a named peril commercial property insurance policy, on the grounds the insured failed to comply with a provision of the policy. The facts of the case are undisputed.[1] Lloyds issued Named Peril Commercial Property Policy No. 42-7560012092-L-00 ("insurance policy" or

---

[1] This Court must view all evidence in the light most favorable to the non-moving party in a motion for summary judgment. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Here, Lloyds offered a brief summary of facts in their motion. (*See* Pls.'/Counter-Defs.' Mot. for Summ. J., Doc. No. 18, ¶¶ 2.1-2.5.) Defendant did not challenge the facts in their motion. (*See* Defendant's, Turtle Creek Apts. Resp. to Pls.' Mot. for Summ. J., Doc. No. 23, at 1.) Thus, the Court adopts the undisputed version of facts presented by Lloyds for the purposes of deciding this motion.

"policy"), covering windstorm and hail damage, to Defendant Turtle Creek Partnership, Ltd., d/b/a Turtle Creek Apartments ("Turtle Creek" or "Defendant"), providing the Turtle Creek apartment complex in Houston with "coverage for loss or damage directly caused by wind and hail." (Defendant's, Turtle Creek Apts. Resp. to Pls.' Mot. for Summ. J., Doc. No. 23, Ex. A, at ICAT NPNA 204 (10 06).) The effective policy period ran from May 27, 2008, to May 27, 2009. (Pls.'/Counter-Defs.' Mot. for Summ. J., Doc. No. 18, ¶ 2.1.)

The relevant provision of the policy is the Flood Warranty endorsement, attached to the policy. The Flood Warranty provides:

### FLOOD WARRANTY

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

As a condition of Insurance provided under this policy, we will not pay for loss or damage caused by or resulting from Windstorm or hail or Named Windstorm if the Covered Property is located in a Special Hazard Flood Area (as designated by the Federal Emergency Management Agency) and you do not purchase and maintain insurance providing coverage for the peril of Flood, as defined in this policy, in an amount at least equal to the maximum limits available by the National Flood Insurance Program (NFIP).

Special Hazard Flood Areas include flood zones: A, AO, AE, AH, A1-30, A99, AR, V, VE and V1-30.

However, this exclusion does not apply if the loss or damage occurs within 45 days from the effective date of this Policy.

All other terms and conditions of this policy remain.

(Doc. No. 23, Ex. A, at ICAT NPNA 810 (01 07).) On September 13, 2008, Hurricane Ike struck the Houston area and allegedly damaged Turtle Creek's apartments. Turtle

Creek submitted a windstorm claim to Plaintiff International Catastrophe Insurance Managers, LLC. (Doc. No. 18, ¶ 2.2.)

During the investigation of the windstorm claim, Lloyds determined that the Turtle Creek apartments were located in a Special Hazard Flood Area as designated by the Federal Emergency Management Agency, that Turtle Creek failed to purchase and/or maintain flood insurance for its property, and that the windstorm damage occurred after 45 days from the effective date of the policy. (*Id.* ¶ 2.3.) Turtle Creek does not dispute these facts.

After Turtle Creek's breach of the policy was established, Lloyds filed suit in this court seeking a declaratory judgment that it has no duty or obligation to indemnify Turtle Creek in connection with the Hurricane Ike windstorm claim. (*Id.* ¶ 2.4.) Turtle Creek counterclaimed for bad faith, breach of contract, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act. (*Id.* ¶ 2.5.)

Lloyds now moves for summary judgment, maintaining that Turtle Creek's failure to obtain flood coverage relieves it of the duty to provide windstorm coverage. Turtle Creek argues that the insurance policy is misleading and ambiguous, that use of the phrase "Flood Warranty" is inherently misleading, and that the policy is unconscionable. (Doc. No. 23, at 1.)

## II. LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

### III. ANALYSIS

#### A. Texas Law

Texas law governs our analysis of the policy provisions. According to Texas law, "the meaning of an insurance contract is to be determined under standards applicable to contracts generally." *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 706 (S.D. Tex. 2002). A court must "give effect to the intention of the parties as expressed by the policy language," and "'[w]hen the terms of an insurance policy are unambiguous, a court may not vary those terms.'" *Id.* (quoting *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995)). If a contract is worded so that it can be given a definite or certain legal meaning by the court, it is unambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted).

However, if the contract is susceptible to two or more reasonable interpretations, it is ambiguous. Whether a contract is ambiguous is a question of law that must be decided by the courts. *Id.* Courts consider the contract "as a whole in light of the circumstances present when the contract was entered." *Id.* When a court finds that an insurance contract is ambiguous, it will adopt the construction most favorable to the insured. *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 842 (Tex. App.—El Paso 1999, no pet.).

Lloyds urges that the "Flood Warranty" provision ("flood provision") of the policy operates as an unambiguous warranty in the insurance context, and thus Turtle Creek had a duty to comply literally with its terms in order to receive coverage. Turtle Creek maintains that the policy was ambiguous and unconscionable.

In insurance law, a warranty is a "statement made by the insured, which is susceptible to no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true." *Riner v. Allstate Life Ins. Co.*, 131 F.3d 530, 537 n.7 (1998) (citing *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965)). The parties "must have intended that the policy stand or fall on the literal truth or falsity of the statement in question." *Allied Bankers Life Ins. Co. v. De La Cerda*, 584 S.W.2d 529, 532 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.). Where an unambiguous warranty has been created in an insurance policy, a breach of that warranty makes the policy void or voidable, regardless of the materiality of the warranty to the loss. *See* 6 Couch on Insurance 3d ed. §§ 83:21, 83:26.

Warranties that cause a forfeiture of the policy are "strongly disfavored" in the law. *Riner*, 131 F.3d at 537 n.7; *De La Cerda*, 584 S.W.2d at 532. Thus, Texas courts "follow the modern trend of construing policies to prevent forfeiture." *Cartusciello v.*

*Allied Life Ins. Co. of Tex.*, 661 S.W.2d 285, 287 (Tex. App.—Houston [1st Dist.] 1983, no writ).

### B. Flood Provision Ambiguity

The policy's flood provision is labeled a "Flood Warranty," and provides that "[a]s a condition of Insurance provided under this policy, we will not pay for loss or damage caused by or resulting from Windstorm or hail or Named Windstorm if the Covered Property is located in a Special Hazard Flood Area (as designated by the Federal Emergency Management Agency) and you do not purchase and maintain insurance providing coverage for the peril of Flood." The policy also states that the "exclusion does not apply if the loss or damage occurs within 45 days from the effective date of this Policy." (Doc. No. 23, Ex. A, at ICAT NPNA 810 (01 07).)

Turtle Creek urges that the flood provision does not operate independently of other policy provisions. It points to a subsequent policy endorsement, the "Flood Insurance Notice," ("flood insurance notice") to support its argument that the policy is ambiguous. The flood insurance notice provides:

### FLOOD INSURANCE NOTICE

### PLEASE READ THIS NOTICE CAREFULLY.

> This policy excludes any loss or damage caused by or resulting from Flood (as defined in Article XI (5) of this policy). Flood insurance may be purchased separately from a private flood insurer or the National Flood Insurance Program ("NFIP"), an entity created by the United States Federal Government.
>
> All other terms and conditions of this policy remain.

(Doc. No. 23, Ex. B.) Turtle creek argues that, because the flood insurance notice states that flood insurance "*may*" be purchased, while the flood provision appears to state that

6

flood insurance *must* be purchased, the policy is "patently ambiguous and misleading by its very terms." (Doc. No. 23, at 3.) In other words, Turtle Creek's position is that the policy is ambiguous because the flood provision makes flood coverage mandatory, whereas the flood insurance notice renders flood insurance optional. The Court rejects this argument. The two provisions do not conflict. The flood provision makes flood coverage mandatory in only some cases—those where the covered property is located in a flood hazard area. For all other properties, purchasing flood coverage is optional. That is, those insured properties not located in flood hazard areas will still receive windstorm coverage without purchasing flood coverage. Thus, the flood insurance notice simply serves to exclude flood coverage from the windstorm policy, and advise an insured where flood insurance may be obtained if she wishes to obtain such coverage. The flood provision, on the other hand, notifies a subset of insureds whose properties are located in hazard areas that they must obtain flood coverage in order to receive windstorm coverage under the policy. In the Court's view, these two provisions coexist harmoniously in the policy and do not conflict.

After a careful review of the policy, however, the Court rejects, for other reasons, Lloyds' argument that the flood provision operates as a warranty.

Although the provision begins with "Flood Warranty," a single use of the word "warranty" is not enough to convert the provision into a proper warranty. *See* 6 Couch on Insurance 3d ed. § 83:4. Thus, the Court is not willing to take that single marker as dispositive of the issue. Furthermore, although the word is used in the title of the provision, nowhere in the substance of the provision does the policy include typical markers of a warranty, such as by providing that the "insured warrants as being true" that

7

she would maintain flood insurance as a condition of the windstorm policy. *See Gouverne v. Care Risk Retention Group, Inc.*, No. 2-07-206, 2008 WL 2065835, at *5 (S.D. Tex. 2008) (upholding policy's warranty that provides, in both the title and substance of multiple provisions, that the insured warranted certain information to the insurer as being true); 46 Tex. Jur. 3d *Insurance Contracts and Coverage* § 519 ("[T]he use of the word 'warranty' in a policy is not to be taken as necessarily creating a warranty in law. It must . . . appear in connection with the other language of the instrument that the parties mutually intended that the policy should not be binding if the statement were not literally true.") Where the substance of the agreement does not unambiguously indicate that the provision is to be construed as a warranty, the Court will not construe the use of the word "warranty" in a section heading as creating a binding warranty between the insured and insurer. *See Neece v. A.A.A. Realty Co.*, 322 S.W.2d 597 (Tex. 1959) ("While in certain cases, one must consider captions in order to ascertain the meaning and nature of a written instrument, it has been held that the greater weight must be given to the operative contractual clauses of the agreement, for '[a]n instrument is that which its language shows it to be, without regard to what it is [labeled].'") (quoting *Bailey v. Mullens*, 313 S.W.2d 99, 103 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.)); *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 463 (5th Cir. 2001) ("[T]he mere mention of the word 'arbitration' in a contract's section heading cannot a binding arbitration agreement make, especially when, as here, the language of the agreement itself conspicuously lacks any of the universal indicia of an arbitration clause."). The substance, not the title, determines the nature of this policy provision.

The Court now turns to the substance of the flood provision. The flood provision begins: "[a]s a condition of Insurance provided under this policy, we will not pay for loss or damage caused by or resulting from Windstorm or hail or Named Windstorm" if the covered property is located in a hazard flood area and the insured does not maintain flood coverage. (Doc. No. 23, Ex. A, at ICAT NPNA 810 (01 07).) Thus, the provision appears to be a condition to coverage, a construction that, when worded unambiguously, would similarly defeat windstorm coverage under the policy.[2] However, a few sentences later, the provision is referred to as an "exclusion" rather than a condition, and nowhere in the provision or the policy does it state that the policy will not take effect, or will be void, if the requirements in the flood provision are not fulfilled. The flood provision simply states that Lloyds "will not pay for loss or damage." Thus, the policy could reasonably be read as a limitation on coverage under an effective policy—an exclusion—rather than a condition that renders the policy ineffective.[3]

The Court's view that the flood provision is not an unambiguous warranty or condition to the contract is supported in a review of the entire policy. Nowhere does the policy state that it is void if certain statements are untrue. Nor does the policy provide that it is effective only where certain statements are true. Thus, the policy does not include basic "indicia usually associated with a warranty." *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (1965).[4]

---

[2] Where conditions to coverage have not been fulfilled, the policy is avoided. *See* 6 Couch on Insurance § 83:30; *see also* Assurity Life Ins. Co. v. Grogan, 480 F.3d 743, 745-46 (5th Cir. 2007) (collecting cases).
[3] The flood provision states that the windstorm coverage "exclusion does not apply if the loss or damage occurs within 45 days from the effective date of this Policy." (Doc. No. 23, Ex. A, at ICAT NPNA 810 (01 07).)
[4] The third indicium noted by the *Lane* court, that there be an express declaration in the policy that certain clauses are warranties, 391 S.W.2d at 402, is also absent in the Court's opinion, because no warranty language is used in the body of the flood provision. *See supra* pp. 7-8.

9

Moreover, another clause located in a section of the policy labeled "Part I—General Provisions," states exactly the circumstances under which the policy is void. The clause provides:

### Article XIV   Concealment, Misrepresentation and Fraud

> This entire Policy shall be void if, whether before or after a loss, You have concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or Your interest therein, or in case of any fraud or false swearing by You relating thereto.

(Doc. No. 23, Ex. A, at ICAT NPNA 100 (01 07).) This clause is the only one in the policy setting forth the conditions that void the policy. "The policy provisions are inconsistent" if the flood provision, requiring flood coverage for the Turtle Creek apartments, is held to be a warranty "that voids the policy without reference to [its] materiality." *Lane*, 391 S.W.2d at 399.

The Court concludes that the policy fails to create an unambiguous warranty whereby Turtle Creek warranted to Lloyds that it would maintain flood coverage. The policy fails for the following reasons: it does not include warranty language in the substance of the flood provision; simultaneously describes the flood provision as a "condition" and "exclusion"; does not provide anywhere within the flood provision that the policy is void if the warranty provided by the insured to the insurer is not true; does not provide anywhere in the policy that it would be void if certain clauses were untrue, or that it would be effective only if certain clauses were true; and includes a conflicting provision that lays out the sole circumstances under which the policy is void—namely, where the insured has concealed or misrepresented a material fact concerning the insurance—that does not apply to the facts of this case. If some of these faults were

cured, the Court might be persuaded that the flood provision operated as a warranty. However, given the number of defects both within and without the flood provision, the Court does not believe that the provision meets the high threshold that Texas law places on both warranties and conditions that work forfeiture upon the insured.

Because the Court finds that the contract is ambiguous as to its characterization of the flood provision and the effects in case of breach, it will adopt the construction most favorable to the insured. *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 842 (Tex. App.—El Paso 1999, no writ). Thus, the flood provision is only an exclusion or limitation on coverage, whereby Lloyds provides that it will not pay for windstorm damage in certain situations. It is undisputed that Turtle Creek breached the flood provision by not obtaining flood insurance concurrently with its windstorm coverage.

Where an insured commits an immaterial breach of a policy, that breach "does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation." *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 631 (Tex. 2008) (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). In determining whether a breach is material, "courts must consider, among other things, 'the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance.'" *Id.* at 633.

The Texas Supreme Court applied these principles to a similar clause in *Hernandez v. Gulf Group Lloyds*. The clause, known as a settlement-without-consent provision, stated that underinsured motorist coverage did not apply where the insured had suffered damage and later entered into a settlement with the person liable for the damage without first obtaining consent from the insurer. The court found that, under the

circumstances, the insured's breach of the policy was immaterial and did not relieve the insurer from paying on the policy. 875 S.W.2d 691, 693-94 (Tex. 1994). In considering whether the breach was material, the court noted that, in some underinsured motorist cases, "there may be instances when an insured's settlement without the insurer's consent prevents the insurer from receiving the anticipated benefit from the insurance contract; specifically, the settlement may extinguish a valuable subrogation right." *Id.* at 693. However, where the insurer was not prejudiced, for example because the "extinguished subrogation right [had] no value," *id.*, the breach was immaterial and the insurer's duties were upheld.

Courts in this state and federal circuit have subsequently applied the Texas Supreme Court's rule to other insurance policy provisions, including an insured's notice duty in occurrence policies, an insured's notice duty in claims-based policies, a provision requiring the cooperation of the insured in trial matters, and an insured's duty to mitigate damages. *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 631-34 (Tex. 2008); *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 375 (Tex. 2009); *State Farm Lloyds v. Brown*, No. 3:08-cv-318-O, 2009 WL 2902511, at *2-3 (N.D. Tex. 2009); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 349-50 (5th Cir. 2008).[5] The Court "make[s] an *Erie* guess" on this question and concludes that the

---

[5] Interestingly, the insurance provisions in both *Prodigy* and *Carrizales* included the word "condition." The Texas Supreme Court has recently indicated that it is following a trend of construing insurance policies within the material breach framework regardless of whether the provisions are conditions or non-condition covenants. *See Prodigy*, 288 S.W.3d at 378 (noting that the court's holding in *Paj* "did not rest on the distinction between conditions and covenants," but rather applied "fundamental principle[s] of contract law" in holding that a showing of material breach of an insurance policy must be shown before the insurer's performance was excused) (quotations omitted); *Paj, Inc.*, 243 S.W.3d at 635 (noting that the Court made no distinction in *Hernandez* as to whether conditions or exclusions should be treated differently with respect to the material breach rule, and stating that they are "in effect two sides of the same coin"). Under this approach, which does not distinguish between conditions and exclusions, this Court's added step

12

materiality rule should also apply here. *Carrizales*, 518 F.3d at 350. The flood provision in the pending case is very similar to the settlement-without-consent provision in *Hernandez*. Both provisions seek to exclude situations that will likely alter the liability the insurers have taken on in affording coverage. In *Hernandez*, the insurer did not want to pay for more coverage than it bargained for—it aimed to retain its right to recover some of that money from a legally liable party. In the instant case, Lloyds also does not wish to pay for more coverage than it bargained for, which is a distinct possibility if the covered property suffers flood damage coextensively with windstorm damage.

Thus, the breach in question is material where the covered property also suffered flood damage, thereby making it difficult for the insurer to determine which damage should properly be covered under the windstorm policy and which damage was caused instead by flood damage. (*See* Doc. No. 23) (noting that Lloyds includes the flood provision to ensure an equitable settlement between wind and flood insurers in the event of wind and flood damage caused by a hurricane). If the covered property suffers simultaneous flood and windstorm damage, Lloyds may be deprived of the benefit of its bargain that it will not cover flood damage. This could happen where, for example, the causes of damage are not clear and Lloyds is forced to pay for more damage than it contemplated in setting an insurance premium for windstorm coverage. If, on the other hand, the covered property suffers no flood damage, Lloyds is not prejudiced. The only damage it will be responsible for is windstorm damage, which is precisely the coverage for which it bargained.

---

of discussing conditions was unnecessary, because the result would hold regardless of whether the flood provision was a condition or exclusion.

13

In its review of the record, the Court does not find evidence that establishes conclusively whether the Turtle Creek property suffered flood damage in addition to windstorm damage. Thus, a genuine issue of material fact exists and the court cannot grant summary judgment on Lloyds' claim.

### C. Unconscionability

Turtle Creek also argues that the insurance policy is unconscionable in the way Lloyds seeks to enforce its terms. Under Texas law, a contract is unconscionable when it is unfair because of "overall one-sidedness or the gross one-sidedness of its terms." *In re Marriage of Smith*, 115 S.W.3d 126, 135 (Tex. App.—Texarkana 2003, pet. denied). However, "a party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts." *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.—Texarkana 1975, no writ). The inclusion of an unambiguous flood warranty, while certain to work a hardship on a noncompliant insured, does not constitute "mistake, fraud, or oppression" such that courts should modify the contract. *Id.* (citations omitted). The Court does not find the insurance policy to be unconscionable.

### CONCLUSION

Because the Court finds that the flood provision is ambiguous, it resolves the ambiguity in favor of the insured and, under Texas law, requires that Lloyds establish a material breach of the policy before its performance may be excused. Lloyds Motion for Summary Judgment is **DENIED** because genuine issues of material fact exist as to whether the Turtle Creek property suffered any flood damage. Plaintiffs' counterclaims will also be heard at trial.

**IT IS SO ORDERED.**

SIGNED at Houston, Texas, on this the 14th day of January, 2010.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**